IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY STAFFORD,** | : CIVIL ACTION NO. 1:15-CV-2333 |
| Plaintiff | : |
| v. | : (Chief Judge Conner) |
| | : |
| **CORIZON HEALTH, INC./PHS INC., PA DEPARTMENT OF CORRECTIONS, MR. KELLNER, DR. ARNER, J. MACKNIGHT, JOHN KERESTES, JOHN WETZEL,** | : |
| Defendants | : |

## **MEMORANDUM**

Plaintiff Anthony Stafford ("Stafford"), an inmate housed at the Mahanoy State Correctional Institution, Frackville, Pennsylvania, ("SCI-Mahanoy"), commenced this action pursuant to 42 U.S.C. § 1983 in the Court of Common Pleas of Schuylkill County, Pennsylvania. The state court action was removed to this court on December 2, 2015. (Doc. 1). The matter is proceeding *via* an amended complaint (Doc. 2), wherein Stafford names the following defendants: the Pennsylvania Department of Corrections, Kevin Kellner, Jeanne MacKnight, John Kerestes, John Wetzel, (collectively, "Commonwealth defendants"), Dr. David Ahner, and Corizon Health, Inc./Prison Health Services, Inc. Before the court is a motion (Doc. 5) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by the Commonwealth defendants, and a motion (Doc. 8) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendant Dr. Ahner. For the reasons set forth below, the court will grant each of the pending motions. Also addressed

herein is the dismissal of defendant Corizon Health, Inc./Prison Health Services, Inc. pursuant to Federal Rule of Civil Procedure 4(m).

## I.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual

and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. Allegations of the Amended Complaint

On December 13, 2011, Stafford was transferred to SCI-Mahanoy and prescribed two (2) different antidepressant medications. (Doc. 2, ¶ 21). Stafford alleges that taking the antidepressants "resulted in misconducts for sleeping during count." (Id.) As a result, defendant Dr. Ahner allegedly advised Stafford to stop taking the antidepressants. (Id.)

At some point after his arrival to SCI-Mahanoy, defendant unit manager Kellner placed Stafford in the F-block dorm with seven (7) other inmates. (Id. at ¶ 22). Stafford alleges that, in November 2013, he "fought with a cellmate" and, as a result, defendant Kellner reassigned him to another cell. (Id. at ¶ 23). Stafford asserts that he had problems with his new cellmate, and he was ultimately transferred back to the dorm, where he felt unsafe. (Id.) Stafford requested to be

moved "to avoid another incident," but defendant Kellner allegedly denied his request. (Id. at ¶ 29).

Stafford asserts that he sought outside clearance from defendant Kellner. (Id. at ¶ 26). Defendant Kellner allegedly informed him that his level D mental health status prevented said clearance. (Id.) Stafford filed a grievance regarding the decision to characterize his mental status as level D. (Id. at ¶ 27). Stafford was allegedly informed that his mental health status would be changed to level C. (Id. at ¶¶ 30, 31). In September 2014, while still characterized as level D status, Stafford "hit his cellmate and was placed in the Restricted Housing Unit." (Id. at ¶ 30).

Between September 2014 and December 2014, Stafford filed at least two (2) more unsuccessful grievances regarding his mental health status characterization and treatment. (Id. at ¶¶ 31-41).

## III.  Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege

4

the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A.    Commonwealth Defendants' Motion to Dismiss

#### 1.    *The Pennsylvania Department of Corrections*

The Eleventh Amendment provides that each state is a sovereign entity and a sovereign is not amenable to suit unless it consents. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); see also Alabama v. Pugh, 438 U.S. 781, 782 (1978). Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000). "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity . . . may be lost in [only] one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power." Lavia v. Pa., Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (citations omitted). The Commonwealth of Pennsylvania has expressly withheld its consent to be sued, and Congress has not expressly abrogated this constitutional immunity. See PA. CONST. STAT. § 8521(b); Lavia, 224 F.3d at 195; Williard v. Pennsylvania, No. 94-4309, 1996 WL 334374, at *4 (E.D. Pa. June 17, 1996) (stating the "well-established proposition that the Commonwealth of Pennsylvania has not consented to actions against it in federal court, and thus has not waived its Eleventh Amendment immunity from lawsuits by its citizens").

Thus, any claims against the Commonwealth of Pennsylvania Department of Corrections are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983.

### 2. *State-Created Danger Theory Against Defendant Kellner*

Defendants argue that Stafford's Fourteenth Amendment claims against defendant Kellner are subject to dismissal pursuant to the "state-created danger" doctrine because he failed to allege the requisite factual averments to support such a claim. (Doc. 6 at 12-15). The court agrees.

In order to maintain a claim against state actors under the state-created danger doctrine, a plaintiff must demonstrate the following elements: "(1) 'the harm ultimately caused was foreseeable and fairly direct;' (2) a state actor act[ing] with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions'; and (4) a state actor . . . used his or her authority in a way that created a danger to the [plaintiff] or that rendered the [plaintiff] more vulnerable to danger than had the state not acted at all." Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (citations omitted).

Stafford seemingly alleges that defendant Kellner is liable under the state-created danger theory because he assigned him to the F-block dorm in 2011, and Stafford later fought with a cellmate in November 2013. Stafford claims that

6

defendant Kellner knew there would be problems by assigning him to a dorm with seven (7) other inmates. (Doc. 2 ¶ 43).

Under the first element of the state-created danger doctrine, Stafford must show that the harm which befell him "was foreseeable and fairly direct." Bright, 443 F.3d at 281. The court finds that defendant Kellner did not breach a duty to Stafford by assigning him to the F-block dorm in 2011 when there are no allegations of any prior confrontations between the inmates. Moreover, a fight that occurred two (2) years after the cell assignment could not be foreseeable and fairly direct.

With respect to the second element, Stafford must demonstrate that "a state actor acted with a degree of culpability that shocks the conscience." Id. "[T]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level [however] depends upon the circumstances of a particular case, and depends in particular on 'the extent to which a state actor is required to act under pressure.'" Walter v. Pike Cnty., Pa., 544 F.3d 182, 192 (3d Cir. 2008) (citations omitted). " 'In a "hyperpressurized environment," an intent to cause harm is usually required,' while 'in cases where deliberation is possible and officials have the time to make "unhurried judgments," deliberate indifference is sufficient.' " Id. Under " 'circumstances involving something less urgent than a "split-second" decision but more urgent than an "unhurried judgment," ' there is a mid-level standard that requires gross negligence and arbitrariness—the state actor must 'consciously disregard[ ] a great risk of serious harm.' " Id. at 192-93 (citations omitted).

In the present case, the court finds that the deliberate indifference standard is appropriate. Thus, "the relevant question is whether the [defendant] consciously

7

disregarded a great risk of harm . . . [knowing that] it is possible that actual knowledge of the risk may not be necessary where the risk is 'obvious.' " Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006) (citations omitted). The allegations in the amended complaint fail to show that defendant Kellner had any knowledge of a purported hostile relationship between Stafford and the other inmates in the dorm. Further, the allegations fail to establish that defendant Kellner knew of any inherent risk in assigning Stafford to the particular dorm. Thus, Stafford failed to establish that defendant Kellner acted with a degree of culpability that shocks the conscience.

With respect to the third element, Stafford must prove that "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions." Bright, 443 F.3d at 281 (citation and internal quotation marks omitted). The relationship requirement "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." Kneipp, 95 F.3d at 1209 n. 22. Assuming that Stafford adequately alleged that there was a relationship between himself and the state for purposes of the state-created danger theory, he nonetheless fails to establish the remaining elements of the claim.

The fourth element of the state-created danger doctrine "is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger. . . . It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282 (quoting D.R. by

8

L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc)). A defendant must take affirmative action for a state-created danger claim to lie, merely alleging a failure to act is insufficient. There must also be "a direct causal relationship between the affirmative act and foreseeable harm to the plaintiff." Bright, 443 F.3d at 283 n. 7. Stafford failed to establish that defendant Kellner took affirmative steps that rendered him more likely to engage in a fight. There are no allegations that defendant Kellner even knew of any hostility among the inmates prior to assigning Stafford to the F-block dorm. Additionally, subsequent to the fight, defendant Kellner reassigned Stafford to a different cell.

Stafford has failed to allege facts sufficient to set forth a claim against defendant Kellner based upon a state-created danger theory. Accordingly, the court will dismiss this claim against defendant Kellner.

### 3. *Breach of Duty to Protect Against Defendant Kellner*

To establish a failure to protect claim, an inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012). The inmate must show that the prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

Stafford's failure to protect claim against defendant Kellner fails because he has not alleged that Kellner was deliberately indifferent to an excessive risk to inmate safety. Stafford acknowledges that he was housed in the F-dorm from December 2011 through November 2013, without incident. (Doc. 2 ¶¶ 21-23). Stafford does not allege that there were any fights or instances of harassments posing a substantial risk of serious harm. The complaint suggests that there were two isolated fights, not "longstanding, pervasive, well-documented, or expressly noted" tensions between Stafford and other inmates. Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014) (quoting Farmer, 511 U.S. at 842).

There is no suggestion that defendant Kellner had any prior warning or knowledge that placing Stafford in a particular cell might result in an altercation with another inmate. Nothing in the complaint supports a reasonable inference that defendant Kellner was aware of, and deliberately indifferent to, "any specific incident or cause of tension between the cellmates from which a greater inference of risk could be drawn." Blackstone, 568 F. App'x at 84. The complaint contains a sole conclusory statement that defendant Kellner "had been informed of a threat to Plaintiff's health and safety." (Doc. 2 ¶ 49). There are no further allegations as to who lodged this purported threat, when it occurred, or who informed defendant Kellner of said threat. Thus, Stafford failed to state a viable Eighth Amendment failure to protect claim against defendant Kellner.

### 4. *Personal Involvement/ Respondeat Superior Regarding Defendants MacKnight, Kerestes, and Wetzel*

Defendants MacKnight, Kerestes, and Wetzel argue that Stafford fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because Stafford's allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 6 at 18-21). The court agrees.

Local government units and supervisors typically are not liable under Section 1983 solely on a theory of *respondeat superior*. See City of Okla. City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). It is well-established that:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Stafford fails to establish that defendants MacKnight, Kerestes, and Wetzel had a policy or practice permitting prison employees to engage in the unconstitutional conduct of which he complains. In a conclusory fashion, Stafford states that "it was policy, practice and/or customs of SCI Mahanoy to assign inmates to open cells regardless of compatibility." (Doc. 2 ¶¶ 62-63, 68-69, 74-75). However,

this claim lacks any specificity concerning the alleged deficient policy, and fails to establish the actual existence of any such policy. See Evancho, 423 F.3d at 353. Stafford's allegations regarding the policies, practices, and customs of SCI-Mahanoy are purely conclusory.

Additionally, Stafford acknowledges that he is suing these defendants as "the policy maker[s] at SCI Mahanoy regarding the action of the foregoing Defendants." (Doc. 2 ¶¶ 61, 67, 73). The amended complaint is, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold these defendants liable based on their supervisory roles. This ground of constitutional liability has been routinely rejected by the courts. See Rode, 845 F.2d at 1207. Accordingly, Stafford's claim against defendants MacKnight, Kerestes, and Wetzel, to the extent it relies on a *respondeat superior* theory of liability, will be dismissed.

To the extent that Stafford seeks to impose liability on defendants MacKnight, Kerestes, and Wetzel based on their participation in the grievance procedure, this claim must also be dismissed. The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." McEachin v. Beard, 319 F. Supp. 2d 510, 515 (E.D. Pa. 2004); see also Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Thus, to the extent that these defendants are sued in their capacity for denying Stafford's grievances and appeals, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (concluding that "involvement in the post-incident grievance process" is not a basis for § 1983 liability); Cole v. Sobina,

12

No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

### 5. *Supervisory Claims Against Defendants MacKnight, Kerestes, and Wetzel*

Defendants MacKnight, Kerestes, and Wetzel seek to dismiss any supervisory claims against them based on Stafford's failure to establish that defendant Kellner committed a constitutional violation. (Doc. 6 at 21-22).

As discussed above, Stafford failed to plead facts demonstrating that defendant Kellner violated his constitutional rights. In the absence of such a constitutional violation, there can be no liability on the part of his supervisors. Therefore, since defendant Kellner is entitled to dismissal of the claims against him, defendants MacKnight, Kerestes, and Wetzel are entitled to dismissal of any supervisory claims against them. See, e.g., Reiff v. Marks, 511 F. App'x 220, 223 (3d Cir. 2013) (stating that "a municipality may not be held liable on a failure to train theory when a jury has found that the plaintiff has suffered no constitutional violation") (citing City of L.A. v. Heller, 475 U.S. 796, 799 (1986) (explaining that no Supreme Court "cases authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm")).

### 6. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly

13

established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be "considered at the earliest possible stage of proceedings," a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

Stafford failed to establish the violation of any clearly established constitutional rights. First, there is no existing case law that requires prison officials to assess inmates for compatibility when assigning them to cells. Second, Stafford has no constitutional right to be assigned a particular stability code, or to

be confined in a particular cell.  See Rhodes v. Chapman, 452 U.S. 337 (1981); Hodges v. Wilson, 341 F. App'x 846, 846 (3d Cir. 2009).  Because Stafford failed to establish the violation of clearly established constitutional rights, defendants are protected from liability by qualified immunity.

### B. Defendant Dr. Ahner's Motion to Dismiss

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976).  In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment."  Id. (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Farmer, 511 U.S. at 837. A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Assuming *arguendo* that Stafford's mental health disorder represents a serious medical need, the court must determine whether Stafford has pled a deliberate indifference to that need. The allegations in the amended complaint clearly demonstrate that defendant Dr. Ahner was not deliberately indifferent to Stafford's serious medical need. The amended complaint provides that defendant Dr. Ahner interacted with Stafford on one occasion, in December 2011, wherein Dr. Ahner allegedly advised Stafford to stop taking antidepressants. (Doc. 2 ¶ 21). Stafford does not allege that the prescribed antidepressants resulted in any risk of harm to his health. Rather, Stafford simply alleges that the antidepressants "resulted in misconducts for sleeping during count." (Id.) Stafford further avers that he "continued to suffer from sleeping during count" and "was unable to adjust his sleeping habit" due to the alleged improper medication dosage. (Id. ¶¶ 58-59).

By Stafford's own account, he received medical treatment and medication at SCI-Mahanoy. To the extent that Stafford is dissatisfied with the purported side effect of the medication, i.e., sleepiness, and the dosage of the medication, such allegations, at best, demonstrate Stafford's disagreement with medical treatment. Though he may have preferred a different medication dosage, such disagreement is

not enough to state a § 1983 claim. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "[m]ere disagreement as to the proper medical treatment is" insufficient to state a constitutional violation); Gause v. Diguglielmo, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation). This is particularly true in light of the fact that there are no allegations in the amended complaint that defendant Dr. Ahner intentionally withheld medical treatment from Stafford in order to inflict pain or harm upon him. See Farmer, 685 F. Supp. at 1339; Rouse, 182 F.3d at 197.

The allegations in Stafford's amended complaint amount to nothing more than his subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. See Carpenter v. Kloptoski, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22, 2012) (citing White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)) (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment simply do not suffice to satisfy the deliberate indifference standard. See Monmouth Cnty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Based on the foregoing, Stafford's amended complaint fails to articulate a plausible civil rights claim against defendant Dr. Ahner.

**IV.     Leave to Amend**

When a complaint fails to present a prima facie case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  In the instant case, Stafford's constitutional claims contain both legal and factual flaws and, therefore, are incurable.  Additionally, this action is proceeding on Stafford's amended complaint.  For these reasons, the court concludes that allowing Stafford another opportunity to amend would be futile.

## V.     **Federal Rule of Civil Procedure 4(m)**

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Defendant Corizon Health, Inc./Prison Health Services, Inc., has never been served in this case, nor has an attorney entered an appearance on its behalf. This defendant was named in the original complaint, as well as in the amended complaint that was filed on November 12, 2015. Nearly nine (9) months have passed since such time, and it appears that Stafford has abandoned the action against this defendant.

On June 23, 2016, after the expiration of the 90-day time period set forth in Rule 4(m), the court notified plaintiff that the amended complaint against Corizon Health, Inc./Prison Health Services, Inc. was subject to dismissal, and afforded him time to effect service. (Doc. 14). The court subsequently afforded plaintiff additional time to effect service. (Doc. 16). Plaintiff has nonetheless failed to provide the court with the correct mailing address for Corizon Health, Inc./Prison Health Services, Inc., and failed to effect proper service on this defendant. As a result, this non-served defendant will be dismissed from this case pursuant to Rule

4(m) of the Federal Rules of Civil Procedure, as it has not been served within 90 days of the date on which it was named as a defendant in this case.

## VI. Conclusion

For the reasons set forth above, defendants' motions (Docs. 5, 8) to dismiss will be granted. Defendant Corizon Health, Inc./Prison Health Services, Inc., will be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m). An appropriate order shall issue.

       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     August 9, 2016